Smith, C. J.
The material facts in this case, as shown by the record, are these: The defendant below, “ The Supreme Council of the *131 •Catholic Knights of America,” is a corporation, organized under a charter from the state of Kentucky, among other, “ for fraternal and social purposes,” and to maintain a benefit fund, from which a sum not to exceed $2,000 shall be paid at the death of each member to his family, or be disposed of as he may direct,” with power to institute subordinate branches. The members of these subordinate branches, by the constitution which was adopted, were bound to pay certain dues and assessments made upon them, on the death of any member in good -standing, in any branch, and if in good standing himself at the time of his death, such benefit fund was to be paid as provided by him. Tf he became and continued in arrears for -such .dues or assessments for three months or more, he was not entitled to vote or to benefits, and when six months in arrears, ■he must be suspended.
A subordinate branch was established in this city,- — St. Patrick’s Branch No. 135. Cormack Connema became a member thereof in May, 1880, and thereupon received a certificate from the Branch setting out, that “under the provisions of the laws governing the order, the sum of $1,000 will be paid by the Supreme Council Catholic Knights of America, upon due notice of his death,” to such person or persons as he might designate,” provided he is in good standing when he dies.”
Connema made default in his payments, and on May 15, 1881, he was suspended from membership.
The constitution of the order further provides: “ each member of this Branch who has been suspended for non-payment of dues, fines or assessments, applying to be reinstated,”, must pay the full amount he is in arrears for dues, all assessments and fines charged at date of suspension, and all debts on deaths that occurred on each assessment prior to his application for a a reinstatement, and shall also furnish tothe Branch the medical examiner’s certificate, as prescribed for persons on origi nal application — provided that he apply for reinstatement within ninety days after the date of such suspension; at the expiration of ninety days, he shall no longer have any rights against the Branch or Order. If the report is favorable, a ballot shall then be ordered spread by the president; and if a majority of the ballots cast are favorable, the applicant shall *132 be declared reinstated; otherwise he shall be declared rejected.”
At a meeting of the Branch, June 5, 1881, Connema offered to pay the amount due from him, and desired to be reinstated. The Branch declined to receive it, or reinstate him until he complied with the rule, by furnishing the certificate from the medical examiner. He procured and presented it at the same meeting. On th face of it, it showed his age to be the same as when he was admitted to membership a. year before, and objection was made to his being reinstated until his true age could be ascertained, and by common consent of the Branch, and to which Connema assented, it was determined that inquiry be made by letter, of his parish priest in Ireland as to his true age. A letter was accordingly written on behaif of the Branch to the priest, but it was returned, without any definite information. No ballot was taken that night, or ever afterward, on the question of Connema’s reinstatement, nor does it appear to have ever been further adverted to by the Branch or Connema, until after his death, which occurred in January following. It is conceded that he was of proper age at his original admission, and when, he applied for reinstatement.
The defendant below refused to pay the $1,000 to his heirs according to his direction, and this suit was brought by them to enforce its payment, and resulted in a judgment in the common pleas in their favor. A motion for a new trial was filed and overruled, and a bill of exceptions taken containing all the evidence offered, with exceptions to the ruling of the court on the admission of evidence, and to the charge to the jury, and the plaintiff in error now seeks the reversal of that judgment.
Were the plaintiffs below entitled to receive this benefit? That depends, we think, upon the question whether Connema was a member of the Branch at the time of his death. It is the express provision of the constitution, and a stipulation of the contract, that it was payable only in the event that he was a member of the order in good standing at the time of his death. It is clear that he was, not actually such a member then, for it is admitted that he had been suspended for nonpayment of dues, and assessments, and had not been formally *133 restored. The plaintiffs, then, would seem to have no right to recover, unless what took place on the evening of June 5,1881, had in law the effect to restore him and make him a member in good standing in the Branch.
This we think was not the case — that the tender of the amount due, and the presentation of the examiner’s certificate were not sufficient to accomplish this. They were only preliminary steps to the taking of the ballot on the question of his reinstatement, and a majority of the votes then cast, was required to have such effect. This was essential, and the Branch, or its members had a discretion whether they would receive him at all, precisely as they had when he was first admitted to membership. If the constitution had provided that a person who had been suspended, on producing such certificate and paying all dues, should again be a member, we think the production thereof and a tender of the amount due, even if improperly refused, would entitle him to be considered a member.. But this is net the provision of the constitution. The matter is to be determined by the vote of the members; and who can tell, if it had been balloted upon, that a single member would have voted for his restoration? • How, then, when it is purely a matter of discretion with the members, can it be said that a failure to take the ballot, is equivalent to a vote of a majority in favor of his restoration?
The only plausible claim that can be made as to this is, that the vote was not ordered by the president as the constitution seems to direct, and that therefore the applicant was deprived of his right, and it should be presumed in his favor. There are two answers to this. In the first place, that the vote seems to have been postponed by the consent of all parties. If Connema consented to this course, it was a virtual withdrawal of his application for reinstatement until the question- raised was settled, and was a consent on his part to occupy the position of a suspended member until further action was had; and he cannot complain of that to which he consented, and nothing further seems to have been done until after his death; and in the second place, if he was so far a member of the Branch as to be entitled as a matter of right to an immediate vote, and was aggrieved by the failure to have it taken, he, as such mem. *134 ber, had a right to appeal to the Supreme Council, as: appears by Article 14, Sec. 1; of the Constitution;- and we understand the law to be, that it'would be his duty to avail himself of the remedies given to him by the constitution of the'order, and until that-is done, cannot appeal to the-law courts for redress.
• The court of common-pleas allowed the plaintiff below, against-the objection of-the defendant, to offer evidence-that after the death of Con nema, the branch authorized its secretary to make, in writing, a statement of the facts as he understood them, in relation to the transactions between Connema and the Branch, and asking the judgment of the Supreme Council whether the Branch had not unwittingly made a mistake in the matter, and in not reinstating him, and praying the Supreme Council to pay to his representatives the amount of this benefit; and the proof showing that this paper had been approved by the Branch, it was allowed to be offered in evidence as an admission of an agent of the Supreme Council.
We cannot see in the bill of exceptions any evidence which shows that this Branch stood in'such a relation to the Supreme Council as made its statements, made after the death of Connema, and when the rights of the parties had been fixed, and in regard to a past transaction, evidence against the defendant. If the Branch was in any sense the agent of the Council, its declarations made at the time of the transaction of the business of the Council by it, are alone competent. Everything then, which took place at the time of the application for reinstatement, might be proper. But when the business is all completed, the agent is then no, longer authorized to bind the principal by its admissions or statements of what it says was done or said before that time.
We think then the court erred in admitting this evidence, and in-effect charging the jury that on the presentation of the certificate of the medical examiner by Connema on June 5, 1881, and the tender of the amount due from him, he practically became a member again, and was entitled to benefits, and also that there was error in overruling the motion for a new trial.
We have come to this conclusion with much reluctance. There are circumstances disclosed in the case, which, without *135 .affecting the legal questions, excite our sympathy for the •children of this man, and which lead us to the conclusion, that this strict, and, as we deem it, legal defense ought not to be insisted upon by the defendant, but that there bhould be a fair and equitable adjustment of the claim. But with bur ■views of the law governing it, we can only reverse the judgment and remand the case for a new trial.
Carr & Dengler and P. Bolle, for plaintiff in error.
Logan & Slattery for defendants in error.